# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2691

JEFF SPOERLE, *et al.*,

*Plaintiffs-Appellees*,

*v.*

KRAFT FOODS GLOBAL, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-cv-300-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED DECEMBER 3, 2009—DECIDED AUGUST 2, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Fair Labor Standards Act requires employers to pay workers for time spent donning and doffing "integral and indispensable" safety gear. See *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005); 29 U.S.C. §254. It also allows labor and management to vary this rule through collective bargaining:

Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for

which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. §203(*o*). This appeal presents the question whether §203(*o*) preempts state law that lacks an equivalent exception.

Kraft Foods requires the employees who prepare meat products at its Oscar Mayer plant in Madison, Wisconsin, to wear safety gear, such as steel-toed boots and hard hats, plus a smock that keeps other garments clean. Workers must wear hair nets and beard nets to protect the food from dandruff and other contaminants. It takes each worker a few minutes at the start of every day to put these items on, and a few more at day's end to take them off. Kraft Foods and Local 538 of the United Food and Commercial Workers Union have agreed that this time is not compensable. Section 203(*o*) permits unions and management to trade off the number of compensable hours against the wage rate; the workers get more, per hour, in exchange for agreeing to exclude some time from the base.

The plaintiffs in this suit disagree with the tradeoff struck in the collective bargaining agreement and want the time included—and at the higher hourly rate that the union obtained by agreeing to exclude these few

minutes a day. They have two principal arguments: first that protective gear is not "clothing" under §203(*o*), and second that Wisconsin's own wage-and-hour legislation lacks any equivalent to §203(*o*). The first of these arguments is a loser, for reasons given in *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209 (4th Cir. 2009). We agree with *Sepulveda* and need not repeat its analysis. But the second prevailed in the district court. The Fair Labor Standards Act has a saving clause:

> No provision of this chapter . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . . No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

29 U.S.C. §218(a). This means, the district court concluded, that donning and doffing time counts toward the workweek (and overtime rates) if state law so provides. Kraft Foods concedes that Wisconsin requires time spent donning and doffing safety gear to be compensated at the minimum wage or higher, and that this time counts toward the limit after which the over-

time rate kicks in. See Wis. Stat. §§ 109.03, 103.02; Wis. Admin. Code § DWD 272.12(2)(e). (This makes it unnecessary to decide whether federal law would require payment for this time, in the absence of a §203(*o*) agreement. See *Pirant v. United States Postal Service*, 542 F.3d 202, 208–09 (7th Cir. 2008) (discussing which kinds of required safety gear are "integral and indispensable" for purposes of the analysis in *IBP*).) Kraft Foods contends, however, that §203(*o*) preempts Wisconsin's law. The district judge rejected that argument and entered judgment in plaintiffs' favor as a matter of Wisconsin rather than federal law, see 626 F. Supp. 2d 913 (W.D. Wis. 2009), a step supported by the supplemental jurisdiction of 28 U.S.C. §1367.

Kraft Foods contends that §203(*o*) embodies a federal decision to permit a collectively bargained resolution to supersede the rules otherwise applicable to determining the number of hours worked. That's an accurate statement, as far as it goes. But "as far as it goes" means "as far as §203(*o*) itself goes." And the statute tells us exactly how far it goes. The first words of §203(*o*) are: "In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed . . .". Section 206 sets the federal minimum wage per hour worked. Section 207 specifies how many hours a person may work in a given period before overtime pay commences. These are rules of federal law. States are free to set higher hourly wages or shorter periods before overtime pay comes due. That's what §218(a) says. Nothing in §203(*o*) limits the operation of §218(a).

As far as we can tell, this is the first time an employer's argument that §203(*o*) preempts state law has reached a court of appeals. All three district judges who have considered this argument have rejected it. In addition to the decision under review, see *In re Cargill Meat Solutions Wage & Hour Litigation*, 632 F. Supp. 2d 368, 392–94 (M.D. Pa. 2008); *Chavez v. IBP, Inc.*, 2005 U.S. Dist. Lexis 29714 at *112–22 (E.D. Wash. May 16, 2005). If Wisconsin had provided for a minimum hourly wage exceeding the rate in the collective bargaining agreement between Kraft Foods and Local 538, the state law would trump the CBA. And if this is so for the hourly rate, it must be equally so for the number of hours, because how much pay a worker receives depends on the number of hours multiplied by the hourly rate. It would be senseless to say that a state may control the multiplicand but not the multiplier, or the reverse, because control of either one permits the state to determine the bottom line (provided that the state's number exceeds the federal minimum; §218(a) does not allow a state to authorize employers to pay less than the federal floor).

As Kraft Foods sees things, Wisconsin is meddling with collective bargaining, so that federal labor law preempts state law if §203(*o*) does not do the trick. Yet nothing in the Wisconsin statutes gives a state court, or other state official, any role in interpreting or enforcing a collective bargaining agreement. What Wisconsin requires is that the collective bargaining agreement be *ignored*, to the extent that it sets lower wages or hours than state law specifies. Cf. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988) (state rules that disregard, rather

than interpret, collective bargaining agreements are not preempted by federal labor policy). Suppose the CBA set a wage of $8 per hour, higher than the current federal minimum wage of $7.25, while Wisconsin law set a minimum wage of $8.25. (Wisconsin's actual minimum wage is $7.25, but some states, including Illinois, use $8.25.) No one would contend that the employer could pay the workers $7.25 an hour, even though that is allowed by federal law if labor and management agree (this is the same sense that excluding donning and doffing time is allowed by §203(*o*)). Which rate would prevail: $8 from the CBA or $8.25 from state law? According to §218(a), the employer must pay $8.25 an hour; state law supersedes the collective bargaining agreement. And if this is so about the wage per hour, it is equally true about the number of hours.

Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application. If a CBA were to say: "the workers will receive the minimum wage under FLSA, and not one cent more no matter what state law provides," that would be ineffectual. So too would an agreement along the lines of: "Because our base hourly rate is more than 150% of the minimum wage, we need not pay overtime rates under state law." States can set substantive rules that determine the effective net wage, even when a CBA plays a role (as it does when a law requires overtime pay at some multiple of the base pay set in a collective bargaining agreement). Every state's overtime-compensation rule could *affect* collective bargaining—knowing that state law requires pay at time-and-a-half,

labor and management might agree to a lower base rate per hour—but that effect would not prevent application of the state's wage-and-hour statutes.

Management and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually. Imagine a CBA saying: "Our drivers can travel at 85 mph, without regard to posted speed limits, so that they can deliver our goods in fewer compensable hours of work time." That clause would be ineffectual. And a CBA reading instead that "our drivers can travel at a reasonable rate of speed, no matter what state law provides" would be equally pointless. Making a given CBA hard to interpret and apply (as the word "reasonable" would be) would not preempt state law on the theory that states must leave the interpretation of CBAs to the National Labor Relations Board and the federal judiciary; states would remain free to enforce laws that disregarded CBAs altogether. That is what Wisconsin does when determining which donning and doffing time is compensable.

The district court therefore did not err in concluding that plaintiffs are entitled to be paid for all time required by Wisconsin law, and the judgment is

AFFIRMED.